# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | George W. Lindberg | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 7905 | **DATE** | 11/21/2002 |
| **CASE TITLE** | Saundra L. Van vs. Community & Economic Development | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] The court grants defendant CEDA's motion for summary judgment on plaintiff Van's claim of national origin, race and age discrimination, with prejudice. Enter memorandum opinion and order.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | number of notices | |
| | No notices required. | | | |
| | Notices mailed by judge's staff. | | NOV 22 2002 date docketed | |
| | Notified counsel by telephone. | | | |
| ✓ | Docketing to mail notices. | | docketing deputy initials | 22 |
| ✓ | Mail AO 450 form. | U.S. DISTRICT COURT CLERK | | |
| | Copy to judge/magistrate judge. | 02 NOV 21 PM 1:41 | NOV 22 2002 date mailed notice | |
| SLB | courtroom deputy's initials | Date/time received in central Clerk's Office | mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| SAUNDRA L. VAN<br><br>Plaintiff,<br><br>-vs.-<br><br>COMMUNITY AND ECONOMIC<br>DEVELOPMENT ASSOCIATION<br>OF COOK COUNTY, INC.,<br><br>Defendant. | No. 01 C 7905<br><br>Senior Judge George W. Lindberg |

## MEMORANDUM OPINION AND ORDER

DOCKETED

NOV 22 2002

The defendant Community and Economic Development Association of Cook County, Inc. ("CEDA") moves for summary judgment against the plaintiff, Saundra L. Van ("Van"). For the reasons listed below, the court grants CEDA's motion for summary judgment with prejudice.

**Background**

On October 12, 2001, Van, a former employee of CEDA, filed her complaint alleging that (i) she was denied a pay increase because of her sex in violation of Title VII of the Civil Rights Act of 1964 and (ii) she was harassed and terminated from her job because of her age in violation of the Age Discrimination in Employment Act. In her form complaint, Van also claims that she was discriminated against on the basis of her color and race and national origin in violation of Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981.

Van has not filed a response to CEDA's motion for summary judgment. CEDA properly filed its "Notice to Pro Se Litigants Opposing Summary Judgment" pursuant to Local Rule 56.2. Therefore, the facts asserted by CEDA are undisputed by Van.

01 C 7905

## Discussion

### A. Summary Judgment Standard

Summary judgment is proper when the moving papers and affidavits show there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The moving party bears the burden of showing that no genuine issue of material fact exists. Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986). Summary judgment is appropriate where a Title VII plaintiff cannot prove intentional discrimination either through direct proof of discriminatory intent or through the indirect burden shifting method of proof first elaborated in McDonald Douglas Corp. v. Green, 411 U.S. 792 (1973). The "mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury can reasonably find for the [non-moving party]". Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).

### B. Standard of Proving Discrimination

It is well settled that to prove intentional discrimination on the basis of race, sex, national origin or age, a plaintiff can meet this burden by introducing direct evidence from which an inference of discrimination may be drawn. Fuka v. Tomson Consumer Electronics, 82 F. 3d 1397, 1402 (7th Cir. 1996). In a discrimination case, direct evidence is that which can be interpreted as an acknowledgment of discriminatory intent. Chiaramonte v. Fashion Bed Group, Inc., 129 F. 3d 391, 396 (7th Cir. 1997). A statement is direct evidence of discrimination only if it relates to the motivation of the decision maker responsible for the contested decision. Cheek v. Peabody Coal Co., 97 F. 3d 200, 203 (7th Cir. 1996).

2

01 C 7905

Alternatively, if a plaintiff does not have direct evidence of discrimination, she can rely on the burden shifting formula set forth in McDonald Douglas Corp. v. Green, 411 U.S. 792 (1973). Under that analysis, a plaintiff must first establish a prima facie case of intentional discrimination by showing that (i) she was a member of the protected class; (ii) she performed her job satisfactorily to the employer's expectations; (iii) she suffered an adverse employment action, and (iv) she was treated less favorably than similarly situated employees outside the protected class. Plair v. E.J. Brock & Sons, Inc., 105 F. 3d 343, 347 (7th Cir. 1997).

To the extent that a plaintiff can satisfy these four elements and establish a prima facie case of discrimination, the employer must then rebut the prima facie case by articulating a legitimate, nondiscriminatory reason for the contested action. Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 254 (1981). If the employer meets this burden of production, then the presumption of discrimination dissolves and the burden shifts back to the plaintiff to show that the proffered explanation(s) is pretextual. Id. at 256. Throughout this process, the plaintiff retains the ultimate burden of establishing that he was subject to intentional discrimination. St. Mary's Honor Center v. Hicks, 509 U.S. 502, 507 (1993).

### C. Plaintiff's Claim of National Origin Discrimination

Regarding plaintiff's national origin discrimination claim, plaintiff's own deposition testimony confirms that she has no cause of action against CEDA. In her deposition, Van admitted that she was not making a claim of national origin discrimination against CEDA. Moreover, a national origin claim was not part of her charge of discrimination filed with the

01 C 7905

Equal Employment Opportunity Commission and the Illinois Human Rights Commission. Therefore, the Court enters summary judgment in CEDA's favor on Van's national origin claim.

### D. Plaintiff's Race Discrimination Claim

Plaintiff Van has failed to provide either direct or indirect proof of discriminatory intent on CEDA's part on the basis of her race.

Van has not provided any facts or documents to support her claim of discriminatory conduct on CEDA's part on the basis of her race or color. Van's claim regarding the alleged harassment by Ms. Wildner for submitting memos to her is insufficient to establish a prima-facie case of race discrimination since she never suffered an adverse employment action by virtue of this claimed conduct. A tangible employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits. Burlington Industries Inc. v. Ellerth, 524 U.S. 742, 761 (1998). Negative performance evaluations have been held not to be adverse employment actions. Oest v. Illinois Department of Corrections, 240 F. 3d 605, 613 (7th Cir. 2001). Moreover, Van admitted that she was never demoted by virtue of the memos submitted by Wildner; she asserted no facts that she lost her job because of receiving all of the memos and she was not transferred to another position because of receiving the memos. Nor did Van take any time off from work because of receiving the memos. As the affidavit of Robert L. Wharton attests, the decision to terminate Van was made by Lyle Foster in consultations with Mr. Wharton, and not by Pat Wildner. Van does not demonstrate any

01 C 7905

evidence of either direct or indirect discrimination by CEDA on the basis of race. Therefore the Court grants summary judgment in CEDA's favor on Van's claim of race discrimination.

### E. Plaintiff's Sex Discrimination Claim

Plaintiff Van concedes that she has not direct evidence that she was deprived a pay increase because of her sex. Instead, Van attempts to invoke the indirect burden shifting method to support her sex discrimination claim by asserting that Roosevelt Burnside, CEDA's Director of Weatherization, received a salary increase. However, Roosevelt Burnside did not receive a salary increase either in 1999 or 2000. Even assuming that Mr. Burnside did actually receive a salary increase similar to the one that Van was seeking by virtue of her claim that the Early Head Start Program was to be merged with the Head Start Program, Van still cannot establish a prima facie case of discrimination since she admitted in her deposition that Burnside was not in a similarly situated position: Burnside and Van were paid from two different budgets and as Van admitted, she could not have done Burnside's job in Weatherization. Therefore, since Burnside never received a salary increase and since he was not in a similarly situated position as Van, Van cannot establish a prima facie case of sex discrimination. Moreover, since the merger of the Early Head Start and Head Start Programs never took place, Van is not entitled to the 5-10% increase in salary that she is now claiming CEDA deprived her by virtue of her sex. Therefore, Van has no claim for sex discrimination against CEDA and the Court grants summary judgment in favor of CEDA and against Van on Van's sex discrimination claim.

### F. Plaintiff's Age Discrimination Claim

To establish a prima facie case of disparate treatment under the ADEA, Van must either present direct evidence of discrimination or she may present facts which, if unexplained, would

5

reasonably give rise to an inference of discrimination. Boyd v. Potter, 2002 WL 113908 (N.D. Ill. 2002). Van fails to present any direct evidence of age discrimination.

To set forth a prima facie case of age discrimination under the indirect burden shifting method of proof, an employee must show that (i) he or she was over 40 years of age; (ii) he or she was meeting his or her employer's legitimate expectations, (iii) he or she suffered an adverse action; and (iv) similarly situated substantially younger employees were treated more favorably. Franzoni v. Hartmarx Corp., 300 F. 3d 767, 771-772 (7th Cir. 2002).

Van cannot establish that she was meeting her employer's, CEDA's, legitimate expectations. Van admitted that CEDA had problems with her performance in the past and that there were discussions about terminating here in 1995 and 1996. The evidence also establishes that on January 6, 2000, Robert Wharton, President and CEO of CEDA, sent Van a memorandum which delineated his concerns about her performance. Due to the problems that CEDA was experiencing with Van, CEDA decided to reorganize the Head Start Program whereby that program was placed under the recently created Department of Youth and Family Services, and Van then reported to Patricia Wildner. On January 14, 2000, Wharton placed Van on a ninety-day probation status and instructed her that her progress would be reviewed every thirty days. On February 7, 2000, Van met with Ms. Wildner who presented her with a written performance appraisal in which she rated her as either "improvement needed" or "unsatisfactory" in several respects. On April 17, 2000, Ms. Wildner submitted a three month evaluation of Van which was subsequently reviewed by Robert Wharton and Lyle Foster, Executive Vice President of CEDA. Based on the contents of that evaluation, Mr. Wharton and Mr. Foster had various conversations about Van's work performance between late April 2000 through mid-July 2000, and whether CEDA should retain her as Head Start Director. Based on

01 C 7905

these discussions, Mr. Wharton advised Mr. Foster in mid-July that because Van did not show substantial improvement in her performance since the issuance of Ms. Wildner's evaluation, Van should be terminated. Mr. Foster subsequently advised William Burns, Vice President of Administrative Services, to terminate Van. On July 20, 2000, William Burns sent Van a letter advising her that she was terminated from her employment effective July 31, 2000. On July 25, 2000, the Head Start Policy Action Council met and approved the termination of Van.

Therefore, Van has failed to show that she satisfied CEDA's legitimate expectations concerning her performance as Head Start Director as delineated in Ms. Wildner's ninety day performance evaluation. It follows that Van cannot establish a prima facie case of age discrimination. Thus there is no genuine issue of material fact that Van was not terminated as Head Start Director because of her age. Accordingly, the Court grant's CEDA's motion for summary judgment on Van's claim of age discrimination.

ORDERED: The Court grants defendant CEDA's motion for summary judgment on plaintiff Van's claims of national origin, race, sex and age discrimination, with prejudice.

ENTER:

GEORGE W. LINDBERG
Senior U.S. District Judge

DATED: **NOV 2 1 2002**

7